**NOT FOR PUBLICATION**                                                   **CLOSED**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HERBERT J. LIEBER, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DAVID O. MARCUS, et al., <br><br> Defendants. | Civil Action No. 12-6549 (JLL) <br><br> **OPINION** |

**LINARES, District Judge.**

This matter comes before the Court by way of Defendants' motion to dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [Docket Entry No. 36]. On December 12, 2012, the Court gave the parties notice of its intent to convert Defendants' motion into one for summary judgment pursuant Rule 12(d) and afforded the parties with an extension of time in which to submit any additional documentation for the Court's consideration. The Court has considered the submissions made by the Defendants. Plaintiffs did not oppose this motion, nor did they submit any response to this Court's December 12, 2012 Order. No oral argument was heard. *See* Fed. R. Civ. P. 78. For the reasons that follow, Defendants' motion for summary judgment is granted and Plaintiffs' Complaint is dismissed *with* prejudice.

# BACKGROUND[1]

1.  *The Loan*

Plaintiffs made a loan of $625,000.00 to an individual named Intesar H. Zaidi and Zaidi Development Corp. (collectively "Zaidi") in or around 1989. (Compl., ¶ 14). This loan was to be secured by a two mortgages on two properties owned by Zaidi in Monmouth County, New Jersey (hereinafter referred to as the "Zaidi property"). (*Id.*).

2.  *The Underlying Litigation*

In March 2000, Plaintiffs (represented by Defendant Shapiro & Crosland ("S&C")) sued their former lawyer and mortgage broker for failing to properly record the mortgage on the Zaidi property and for committing professional malpractice in failing to otherwise properly protect plaintiffs' interests (hereinafter referred to as "underlying litigation"). (Compl., ¶ 13). In June 2002, the underlying litigation was discontinued without prejudice pursuant to a Tolling Agreement, so that Plaintiffs could pursue a foreclosure action against Zaidi. (Compl., ¶ 17). Pursuant to the Tolling Agreement, the defendants in the underlying litigation ("underlying defendants") agreed to pay for the costs associated with said foreclosure action. (Compl., ¶ 19). Although the Tolling Agreement included a provision whereby it could be extended by the agreement of the parties, no such extension was ever sought by S&C on behalf of the Plaintiffs; thus, the Tolling Agreement expired in September 2003. (Compl., ¶ 18).

3.  *The Foreclosure Action and Condemnation Proceeding*

In or around April 2003, the law firm of Greiner, Gallagher and Cavanaugh commenced a foreclosure action on behalf of Plaintiffs, as Plaintiffs' foreclosure counsel. (Compl., ¶ 20). Defendants S&C continued to serve as co-counsel for Plaintiffs in the foreclosure action. (*Id.*).

---

[1] The Court accepts the following facts asserted in Plaintiffs' Complaint as true solely for purposes of this motion.

In April 2006, S&C notified Plaintiffs that they could no longer represent them in the foreclosure action because of a potential conflict of interest they had just discovered. (Compl., ¶ 21). However, S&C indicated that they could continue to represent plaintiffs in connection with the underlying litigation that had been discontinued in June 2002. (Compl., ¶ 23).

In November 2007, the State of New Jersey commenced a condemnation proceeding against the mortgaged Zaidi property. (Compl., ¶ 25). S&C continued to represent Plaintiffs in connection with all matters arising out of the underlying litigation and the condemnation proceeding; Plaintiffs were billed accordingly. (Compl., ¶¶ 26, 27).

Final judgment was entered in the foreclosure action on October 23, 2007. (Compl., ¶ 24). Plaintiffs were ultimately awarded $2,608,284.00 in damages as a result of the Zaidi foreclosure action, but because of the condemnation proceedings, Plaintiffs could not execute the judgment. (Compl., ¶ 35).

4. *Plaintiffs' Complaint*

In light of the foregoing, Plaintiffs filed a Complaint in the Eastern District of New York on October 2, 2011. Plaintiffs' Complaint asserts claims of breach of agreement to render competent legal services and gross negligence (and/or malpractice) against S&C and David O. Marcus, a partner and/or principal stockholder of S&C, based upon their failure to extend the Tolling Agreement or to recommence the underlying litigation so that Plaintiffs might proceed to recover damages from the underlying defendants.

Defendants filed a motion to change venue in October 2012. This motion was granted and the case transferred to the District of New Jersey on October 16, 2012. This Court's jurisdiction is premised on diversity of citizenship, 28 U.S.C. § 1332.

3

Currently before the Court is Defendants' motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), which was filed on November 16, 2012. On December 12, 2012, the Court advised the parties of its intent to convert Defendants' motion into one for summary judgment pursuant to Rules 12(d) and 56. Defendants seek dismissal of Plaintiffs' Complaint on the basis that the claims asserted therein are barred by the doctrines of res judicata, collateral estoppel and New Jersey's Entire Controversy Doctrine. Opposition to Defendants' motion was due on December 3, 2012. No opposition was filed by the Plaintiffs as of that date.[2] This Court's December 12, 2012 Order (converting Defendants' motion into one for summary judgment), in effect, extended the time in which Plaintiffs could oppose Defendants' motion through December 21, 2012. To date, Defendants' motion remains entirely unopposed.

## LEGAL STANDARD

Summary judgment is appropriate when, drawing all reasonable inferences in the non-movant's favor, there exists no "genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby,*

---

[2] A review of the docket in this matter reveals that a notice was sent by the Clerk of this Court to Plaintiffs' counsel, Joseph O. Giaimo, Esq., on October 26, 2012, stating: "Please be advised, our records show that you are not a member of the Federal Bar of New Jersey. Therefore, you are responsible for having a member of the Bar of this Court file an appearance in accordance with Local Civil Rule 101.1 on behalf of your client." [Docket Entry No. 27]. There is no indication on the docket that Plaintiffs' counsel ever complied with this directive or has otherwise been in communication with this Court concerning this action since it was transferred here on October 16, 2012. Moreover, as stated above, no timely opposition to Defendants' motion was ever filed with the Court, nor was any response to the Court's December 12, 2012 Order ever submitted by Plaintiffs' counsel. In light of the foregoing, and given the Certificate of Service attached to Defendants' motion which indicates that said motion was sent to Plaintiffs' counsel via electronic mail and FedEx on November 16, 2012, [Docket Entry No. 36-4] the Court deems Defendants' motion as unopposed and finds it appropriate to rule on the motion at this time.

*Inc.,* 477 U.S. 242, 255 (1986); *King Pharm., Inc. v. Eon Labs, Inc.,* 616 F.3d 1267, 1273 (Fed. Cir. 2010). With this framework in mind, the Court turns now to Defendants' motion.

## DISCUSSION

Defendants now seek dismissal of all claims asserted in Plaintiffs' Complaint on the basis that said claims are barred by the principles of res judicata, collateral estoppel and/or New Jersey's Entire Controversy Doctrine. In support of this motion, Defendants submit for the Court's consideration the following relevant documents: (1) a complaint filed by Defendants on March 17, 2011 against the Plaintiffs in the Superior Court of New Jersey, Law Division, Bergen County, Docket Number BER-L-2653 and captioned *Shapiro, Croland, Reiser, Apfel & Di Iorio, LLP f/k/a Shapiro & Croland v. Herbert J. Lieber, et al*., seeking payment of outstanding legal fees in connection with Defendants' representation of the Plaintiffs in the Underlying Litigation and Foreclosure Action;[3] (2) a copy of the Answer filed by Plaintiffs in the context of that state court action (hereinafter referred to as the "Fee Action"), which includes three affirmative defenses relating to Defendants' alleged malpractice;[4] (3) an Order by Judge Susan J. Steele, J.S.C., dated June 14, 2012, granting Defendants' motion in limine to strike the malpractice-related affirmative defenses based upon Plaintiffs' failure to "serve an expert report to support the claim as evidence;"[5] and (4) Judge Steele's June 15, 2012 Order Entering Final Judgment in connection with the Fee Action, and awarding $54,829.85 in favor of Defendants.[6]

New Jersey's Entire Controversy Doctrine requires "a party to bring in one action 'all affirmative claims that it might have against another party, ***including counterclaims*** and cross-

---

[3] Valentin Cert., Ex. 5.
[4] Valentin Cert., Ex. 6.
[5] Valentin Cert., Ex. 7.
[6] Valentin Cert., Ex. 8.

claims,' and to join in that action 'all parties with a material interest in the controversy,' or be forever barred from bringing a subsequent action involving the same underlying facts." *Rycoline Prods. v. C & W Unlimited*, 109 F.3d 883, 885 (3d Cir. 1997) (the doctrine "embodies the notion that the adjudication of a legal controversy should occur in one litigation in only one court. . . .") (emphasis added). The Doctrine is codified in New Jersey Court Rule 4:30A, which provides that failure to raise a claim "shall result in the preclusion of omitted claims" in future proceedings. Indeed, the Entire Controversy Doctrine requires litigants to raise all affirmative claims in a single proceeding. *See Cogdell v. Hosp. Center at Orange*, 116 N.J. 7, 24 (1989). Consequently, if a plaintiff fails to litigate all her claims in an earlier proceeding, she is precluded from litigating them in a subsequent proceeding. *See Bernardsville Quarry v. Bernardsville*, 929 F.2d 927, 930 (3d Cir. 1991).

  As a preliminary matter, the Third Circuit has held that New Jersey's Entire Controversy Doctrine does not "preclude the initiation of a second litigation before the first action has been concluded." *Rycoline Prods.*, 109 F.3d at 889. Because the state court Fee Action was not concluded until after Plaintiffs filed her complaint in this matter, the Court must first consider whether the doctrine is even applicable. In *Rycoline Products,* the court held that the Entire Controversy Doctrine did not bar a second action which was filed while a previously-filed related action was still pending. However, the Third Circuit did not reach the issue presented in this case, namely, whether the Entire Controversy Doctrine may bar such a second action once the previously-filed related action has concluded. *See id.* at 889 n. 2.; *Youssef v. Dept. of Health and Senior Servs.*, 423 Fed. Appx. 221, 223 (2011) (declining to rule on the issue of whether "where two actions are pending simultaneously, the Entire Controversy Doctrine may be raised at the time one action is concluded to preclude completely the other action.") (citation omitted).

Plaintiffs do not advance this argument and thus provide no reason for the Court to conclude that the Entire Controversy Doctrine would not apply in this case. Further, at least one court in the District of New Jersey has held that the Entire Controversy Doctrine is applicable "[w]hen the first of two concurrent actions is reduced to judgment by a New Jersey Court." *See Total Packaging Corp. v. Tenneco Packaging Corp.*, No. 01–4286, 2004 WL 758240, at *4 (D.N.J. Apr. 2, 2004). Accordingly, absent a directive from the Court of Appeals, and given that the state court Fee Action was reduced to a final judgment prior to the commencement of this action—in June 2012—the Court finds that the Entire Controversy Doctrine is applicable to the instant matter.

Having reviewed the evidence submitted, it is clear to the Court that the malpractice claims Plaintiffs attempt to assert in this action are barred by the Entire Controversy Doctrine. The malpractice claims asserted here arise out of Defendants' representation of the Plaintiffs in connection with the Underlying Litigation. Prior to the commencement of this action, Defendants filed suit—i.e., the state court Fee Action—against Plaintiffs for payment of outstanding legal fees associated with their representation of the Plaintiffs in the context of the Underlying Litigation. Stated simply, both sets of claims—Defendants' claim for legal fees and Plaintiffs' claims of legal malpractice—are based on the same legal controversy, namely, Defendants' representation of the Plaintiffs in the Underlying Litigation. Recognizing as much, Plaintiffs asserted three affirmative defenses directly related to Defendants' alleged malpractice in connection with the Underlying Litigation in the state court Fee Action. *See, e.g.,* Valentin Cert., Ex. 6, Seventh Defense ("The services rendered by [Defendants] were rendered negligently and/or did not conform to the standard of care applicable to same, and therefore, [Defendants are] not entitled to compensation for the services."). It is therefore undisputed that

Plaintiffs could have—*but did not*—assert malpractice-related counterclaims in the context of the Fee Action. Having failed to assert the malpractice-related claims as counterclaims in the state court Fee Action, Plaintiffs are now "forever barred from bringing a subsequent action involving the same underlying facts." *Rycoline,* 109 F.3d at 885.

As the Third Circuit explained in *Bernardsville Quarry*, Plaintiffs had "but one choice" when the claim for payment of outstanding legal fees were asserted against them by Defendants in the state court Fee Action—namely, to litigate every claim they had based upon Defendants' representation of the Plaintiffs in the Underlying Litigation, to the best of their ability. To a certain extent, Plaintiffs attempted to do so (by filing the malpractice-related affirmative defenses), but did not prevail. Plaintiffs "cannot avoid the consequences of its failure to prevail in state court by taking a second bite of the apple now." *Bernardsville Quarry,* 929 F.2d at 930.

Thus, the Court finds that Plaintiffs' malpractice-related claims are now barred under New Jersey's Entire Controversy Doctrine.[7] Plaintiff has provided the Court with no reasonable

---

[7] Even if Plaintiffs' claims were not barred by the Entire Controversy Doctrine, the Court finds that they would, in any event, be barred by the doctrine of collateral estoppel. Collateral estoppel, or issue preclusion, bars the re-litigation of matters that were actually litigated and decided by another court. *See Watkins v. Resorts Intern. Hotel and Casino, Inc.*, 124 N.J. 398, 423 (1991) ("Under issue preclusion, therefore, '[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.' ") (internal quotations omitted). Issue preclusion applies where (1) the identical issue was decided in a prior adjudication; (2) the issue was actually litigated in the prior proceeding; (3) there was a final judgment on the merits; (4) the determination of the issue was essential to the judgment; and (5) the party against whom the bar is asserted was a party to or in privity with a party to the earlier proceeding. *See Hennessey v. Winslow Twp.*, 183 N.J. 593, 599 (2005). Here, Plaintiffs are precluded from arguing that the legal services rendered by the Defendants in the Underlying Litigation did not conform to the applicable standard of care because this issue was litigated before Judge Steele, whose decision is now a valid final judgment on the merits. *See, e.g., Mortgagelinq Corp. v. Commonwealth Land Title Ins. Co.,* 142 N.J. 336, 346 (1995) ("a dismissal with prejudice constitutes an adjudication on the merits 'as fully and completely as if the order had been entered after trial' "(quotation omitted)); *Feinsold v. Noon,* 261 N.J. Super. 82, 84 (App. Div. 1992) (stating that a dismissal with

basis on which to find otherwise. *See, e.g., Bernardsville Quarry*, 929 F.2d at 929 ("To the extent then that BQI did not adjudicate every aspect of its federal claims, it is now barred from raising them again."). Defendants' motion for summary judgment is therefore granted.

## CONCLUSION

Based on the reasons set forth above, Defendants' motion for summary judgment [Docket Entry No. 36] is granted. Plaintiffs' Complaint is dismissed, *with prejudice.*

An appropriate Order accompanies this Opinion.

s/ Jose L. Linares<br>
Jose L. Linares<br>
United States District Judge

Date: December 27, 2012

---

prejudice constitutes a final adjudication on the merits). The determination of the issue of whether Defendants had committed legal malpractice in connection with the Underlying Litigation was clearly essential to the judgment (awarding Defendants legal fees associated with their work in the Underlying Litigation). Accordingly, the Court finds that collateral estoppel precludes Plaintiffs from re-litigating legal malpractice claims against Defendants arising out of work Defendants performed on Plaintiffs' behalf in the Underlying Litigation.